IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

OHIO VALLEY ENVIRONMENTAL
COALITION, INC., et al.,

                Plaintiffs,

v.                                             CIVIL ACTION NO. 3:11-0149

UNITED STATES ARMY CORPS
OF ENGINEERS, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

      Pending before the Court is Plaintiffs' Motion for an Injunction Pending Appeal, and an Emergency Injunction Pending a Ruling on this Motion (ECF No. 187). In their underlying case, Plaintiffs[1] challenged the decision by the United States Army Corps of Engineers (hereinafter "Army Corps" or "the Corps") to issue an individual Clean Water Act ("CWA") § 404 permit to Highland Mining Company ("Highland") to discharge fill material into streams for the purpose of conducting surface coal mining activities at the Reylas Surface Mine in Logan County, West Virginia. In April 2011, this Court granted the Corps' motion to remand the permit to the agency for reconsideration. In September 2011, the Corps reinstated the permit, and this litigation resumed. All parties then filed cross-motions for summary judgment. The Court granted partial summary judgment for the Corps in a short order on May 1, 2012. *Order*, ECF No. 156. The

---

[1] Plaintiffs are the environmental groups Ohio Valley Environmental Coalition, Inc., West Virginia Highlands Conservancy, Inc., Sierra Club, and Coal River Mountain Watch, Inc.

Court granted summary judgment on the remaining cross-motions on August 10, 2012. *Mem. Op. & Order*, ECF No. 183. Plaintiffs thereafter appealed to the Fourth Circuit Court of Appeals, and filed the pending Motion for an Injunction Pending Appeal and an Emergency Injunction Pending a Ruling on this Motion (ECF No. 187).

The parties appeared before the Court on August 16, 2012 to discuss the motion, and that same day the Court entered an order stating that a hearing would take place on August 23, 2012. *Order*, ECF No. 191. At that hearing, Highland agreed to refrain from any mining activities under the 404(b) permit in this case until after August 27, 2012. The Court heard argument on August 23, 2012, and entered an order extending the stay of any mining activities under the 404(b) permit in this case until decision is made on the merits by the Court regarding Plaintiffs' motion. *Order*, ECF No. 196. For the reasons stated below, Plaintiffs' Motion for an Injunction Pending Appeal (ECF No. 187) is **DENIED.** Nonetheless, this Court **EXTENDS** the current stay of mining activities for an additional 14 days, in order to give Plaintiffs an opportunity to seek relief in the Court of Appeals.

## Discussion

### I. The Standard for a Stay or Injunction Pending Appeal

As noted by the Supreme Court, a federal court's power to issue stays pending appeal is "part of its traditional equipment." *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4 (1942). The Federal Rules of Appellate Procedure and the Federal Rules of Civil Procedure both note the power to grant relief pending appeal. FED. R. APP. P. 8(a)(1); FED. R. CIV. P. 62(c). The Court concludes that the dispositive issue is how the "likelihood of success" factor is applied: is it a literal requirement or may a stay be granted where success on appeal is unlikely but the other

2

factors are met? This quandary is critical, here, because the Court's decision on Plaintiffs' motion for a stay hinges on the answer. Courts routinely cite the same familiar, four-factor test in both settings, implicitly treating them as the same whether at the preliminary injunction stage or at the post-trial, appeal phase. The Fourth Circuit has not yet made a clear statement about what standard should be applied in determining whether to grant a stay or injunction pending appeal.

In *Winter v. Natural Resources Defense Council, Inc.*, the Supreme Court clarified the standard to be applied when determining whether to grant a preliminary injunction: "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." 555 U.S. 7, 20 (2008). The Court in *Winter* analyzed each of these factors separately, to ensure that each one was individually met. The Fourth Circuit Court of Appeals adopted this four-part preliminary injunction test in *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342 (4th Cir. 2009), *vacated on other grounds and remanded*, 130 S. Ct. 2371 (2010), *standard reaffirmed in* 607 F.3d 355 (4th Cir. 2010). In doing so, the Court of Appeals explicitly overruled the Circuit's previous preliminary injunction test from *Blackwelder Furniture Co. of Statesville v. Seilig Manufacturing Co.,* 550 F.2d 189 (4th Cir. 1977).

While the standards articulated in *Winter* and *Blackwelder* utilized similar considerations, the Court of Appeals in *Real Truth* explained at length the differences between the *Winter* standard and the *Blackwelder* standard for granting preliminary injunctions. In discussing these differences, the Court stated that:

> The Supreme Court in *Winter,* recognizing that a preliminary injunction affords relief before trial, requires that the plaintiff make a clear showing that it will likely succeed on the merits at trial. Yet in *Blackwelder,* we instructed that the likelihood-of-success requirement be considered, if at all, only *after* a balancing

3

> of hardships is conducted and then only under the relaxed standard of showing that "grave or serious *questions* are presented" for litigation. The *Winter* requirement that the plaintiff clearly demonstrate that it will *likely succeed* on the merits is far stricter than the *Blackwelder* requirement that the plaintiff demonstrate only a grave or serious *question* for litigation.

575 F.3d at 346-47 (internal citations omitted). Another notable difference was that while *Winter* required that each of the four prongs be independently satisfied, *Blackwelder* instead utilized a more malleable test. *Real Truth*, 575 F.3d at 347. Under *Blackwelder*'s "balance-of-hardship" test, the court first "balance[s] the 'likelihood' of irreparable harm to the plaintiff against the 'likelihood' of harm to the defendant." 550 F.2d at 195. If, on balance, the hardships to the plaintiff are greater, then the plaintiff need only raise serious questions in order to obtain a preliminary injunction, rather than showing a likelihood of success on the merits. *Id.* Specifically, the plaintiff must merely have "raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." *Id.* (quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953.)

*Blackwelder*, however, discussed not only the standard for granting preliminary injunctions, but also the standard for appeal stays; the Court there suggested that the standard for granting a stay pending appeal is more demanding than that for granting a preliminary injunction. 550 F.2d at 194 (citing *Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970) ("Judge Winter explained in *Long* that the petitioner's burden in seeking injunctive relief is substantially greater on appeal.")). Indeed, this is appropriate because at the stay-pending-appeal stage, the merits of the underlying case have already been decided upon by a court, unlike when a party is seeking a preliminary injunction. *Blackwelder* noted with approval the four-factor test that applies for stays pending appeal:

1) Has the petitioner made a strong showing that it is likely to prevail upon the merits?
2) Has the petitioner shown that without such relief it will suffer irreparable injury?
3) Would the issuance of the injunction substantially harm other interested parties?
4) Wherein lies the public interest?

550 F.2d at 192-93 (citing *Airport Comm. of Forsyth Co., N.C. v. CAB*, 296 F.2d 95, 96 (4th Cir. 1961). *Blackwelder* called these factors "essentially independent" of one another, 550 F.2d at 196, and so it appears that only some small degree of balancing among them would be appropriate.

The four-factor test above, originally from *Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921 (D.C. Cir. 1958), has been cited with approval in additional Fourth Circuit cases. *See First-Citizens Bank & Trust Co. v. Camp*, 432 F.2d 481, 483 (4th Cir. 1970); *Long v. Robinson*, 432 F.2d 977, 979-80 (4th Cir. 1970) (omitting the "strong showing" language of the first prong, but later referring to whether the probability of success was "substantial"). Requiring a showing of likelihood to prevail on appeal is a higher burden than requiring that only serious questions concerning the merits be raised. Therefore, prior to *Winter* and *Real Truth*, the Fourth Circuit recognized that a heightened showing of chances of success was required by movants for a stay pending appeal compared to movants for a preliminary injunction, a burden which was justified by the stage in the proceedings at which a motion for a stay occurs.

In light of this history, this Court believes that the four factors mentioned above─ likelihood of success on the merits, irreparable harm to the movant, balancing the harms to either party, and the public interest─ still apply when deciding whether to grant a stay pending appeal. At this stage, in balancing the harms, the Court must consider the harm to the non-moving

parties, in light of the fact that they have already received a decision on the merits in their favor. Defendants argue that the *Winter* test applies directly to stays pending appeal. The Court finds, however, that *Winter's* standard for preliminary injunctions, requiring an independent showing on each prong, does not apply directly to stays pending appeal. *Real Truth* adopted this test in the Fourth Circuit for preliminary injunctions, *not* for stays pending appeal. Rather, the factors are balanced, such that a stronger showing on some of these prongs can make up for a weaker showing on others. *See* 16A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3954 (4th ed. 2012).

At the same time, however, this Court rejects application of *Blackwelder*'s balance-of-hardship test to stays pending appeal, and also Plaintiffs' argument that, as to the first prong, they must merely show serious questions going to the merits, rather than a likelihood of success on appeal. *Winter* and *Real Truth*, though not directly applicable to stays pending appeal, indirectly inform this conclusion. As *Blackwelder* explained, at the stay-pending-appeal stage, a court has already decided on the merits of the underlying case, unlike when a party is seeking a preliminary injunction and it may be unclear how the merits will unfold. Therefore, a party moving for a stay pending appeal must make *at least as strong* a showing on the first prong (likelihood of success) ─ and certainly not a lesser showing ─ as compared to a party moving for a preliminary injunction. On the first prong, the Fourth Circuit has always required more than serious questions going to the merits in order to get a stay pending appeal, as noted above. The Supreme Court in *Winter* stated that movants for a preliminary injunction must show a likelihood of success on the merits, and *Real Truth*'s adoption of *Winter* reiterates that the bar has been raised for parties seeking preliminary injunctions.

Based on *Winter, Real Truth,* and Fourth Circuit precedent addressing stays pending

appeal, although the Court must balance the four factors when deciding whether to grant a preliminary injunction, the first prong never becomes so reduced that a party need only show "serious questions" because of its strong showing on the other factors. It may be possible that showing somewhat less than a "strong showing" or "likelihood" of success on the merits can suffice if the harm to the moving party without a stay is great enough; however, that showing must be more than merely pointing to "serious questions."

Plaintiffs have argued that a showing of "serious questions" should satisfy prong one because to hold otherwise would render Rule 8 of the Federal Rules of Appellate Procedure moot. It is futile, they argue, to ask a district court to decide that it has likely made an incorrect decision in the underlying case in order for that same court to grant relief pending appeal of its own decision. For Rule 8 to have any meaning, they proffer, the district court must be able to grant relief pending appeal upon a lesser showing. While acknowledging the concerns at stake when a given court is asked to decide upon the correctness of its own ruling, this Court believes that the required approach is to focus on what a stay pending appeal means in terms of the current stage in the litigation. At this point, the merits of Plaintiffs' case have already been considered, and Plaintiffs have lost. Highland now faces the prospect of appeal after having won on the merits, and the threat of injunction against activities which were already held to be legal. With this in mind, it would be problematic and unfair to allow Plaintiffs to further delay based on a showing much lower than that required for them to have received a preliminary injunction in the first place. Therefore, Plaintiffs' argument on this point is rejected, and the Court will proceed to apply the test explained above.

## II. Application to the Present Case

### 1. Likelihood of Success on Appeal

As noted above, Plaintiffs must show that they are likely to succeed on appeal in order to obtain a stay pending appeal. The Court finds that Plaintiffs are not likely to successfully appeal the summary judgment against them. This Court still believes that *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177 (4th Cir. 2009), controls the outcome of this case on the merits and dictates the granting of summary judgment against Plaintiffs. While the Court acknowledges that the applicable science in this case was disputed but tends to favor the Plaintiffs, the Court also found that the Corps adequately considered the material before it when making its decision regarding the permit. Plaintiffs' chances of success on appeal, in light of this, are quite low. Therefore, Plaintiffs have not shown a likelihood of success on the merits. Although Plaintiffs have shown that there are "serious questions" at issue in this case, this showing is not enough to satisfy the first prong. As noted below, Plaintiffs do satisfy each of the three other prongs in this case. Because all four factors must be met, however, Plaintiffs' failure to meet the first prong is sufficient grounds for concluding that a stay pending appeal should not be granted to Plaintiffs. However, because the analysis of the "success on the merits" factor presents an unclear question of law, the Court will make findings as to the remaining factors as well.

### 2. Irreparable Injury to Plaintiffs

To obtain relief, Plaintiffs also must demonstrate that they are likely to suffer irreparable harm if an injunction pending appeal is not granted. As this Court and this Circuit have previously stated, "environmental injury, by its nature, can seldom be adequately remedied by

money damages and is often permanent or at least of long duration, i. e., irreparable." *S.C. Dep't of Wildlife & Marine Res. v. Marsh*, 866 F.2d 97, 100 (4th Cir. 1989) (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987)); *Ohio Valley Envtl. Coalition, Inc. v. Maple Coal Co.*, 808 F. Supp. 2d 868, 899 (S.D. W. Va. 2011) (same); *Ohio Valley Envtl. Coalition, Inc. v. Hobet Mining, LLC*, 723 F. Supp. 2d 886, 924 (S.D. W. Va. 2010) (same). "The balance of harms will usually favor the issuance of an injunction to protect the environment" in instances where environmental harm is likely. *Amoco*, 480 U.S. at 545. The Court has also recognized the "permanent harm to the environment that comes from the filling of streams and valleys." *Ohio Valley Envtl. Coalition v. U.S. Army Corps of Eng'rs*, 528 F. Supp. 2d 625, 632 (S.D. W. Va. 2007) (hereinafter "*OVEC v. Corps*"); *see also Kentuckians for the Commonwealth v. Rivenburgh*, 206 F. Supp. 2d 782, 791-92 (S.D. W. Va. 2002), *rev'd on other grounds by Kentuckians for the Commonwealth, Inc. v. Rivenburgh*, 317 F.3d 425 (4th Cir. 2003).

In the instant case, irreparable environmental injury will occur at the site of the mining activities, and subsequently downstream as well, once Highland engages in stream filling activities. Just as Plaintiffs have met their burden in demonstrating harm as part of the standing analysis, they have likewise met their burden in showing that irreparable harm is likely. Plaintiffs need not specify the exact species that will be affected by these mining activities in order for this Court to find that irreparable harm will likely occur. This is because irreparable environmental injury occurs instantaneously with the filling of the stream itself. Once the filling has begun, the harmful environmental effects of that filling often cannot be completely reversed, even if Plaintiffs ultimately succeed on appeal concerning their claim that the mining is prohibited by the CWA and the National Environmental Policy Act ("NEPA"). Indeed, the probability of irreparable harm if an injunction is not granted, as compared to the level of environmental

protection ultimately provided by the regulations at hand, are two distinct issues. *See OVEC v. Corps,* 528 F. Supp. at 631 ("Whether or not the applicable regulations are sufficient to adequately minimize and mitigate the loss of streams, forest, and the organisms that depend upon them is precisely the question that the Court will address on the merits. If the Court allows valley fill construction to continue, and then finds that protections were not adequate, the damage cannot be undone."). Highland has stated that filling activities will begin within months, likely before Plaintiffs' appeal is decided, unless enjoined by the Court.

### 3. Harm to Highland and the Corps

Even so, Highland also demonstrates significant harm that must be considered. In the affidavit Highland submitted, a mining executive explained that the Reylas mine would produce coal suitable for the thermal coal market. The affidavit goes on to describe the current volatility of that market and the uncertainty as to when it might have customers for this expected production. These circumstances, standing alone, make the likelihood of actual harm speculative. However, Highland also points out that the market's uncertainty requires Highland to act quickly, if prospective purchasers are identified, to make a commitment to supply its customers. To that end, Highland would begin stream filling in the next few months so that mining could commence rapidly if the market improves. Having now completed the lengthy permit review period, obtained regulatory approval including reconsideration, borne the delay of litigation, and then prevailed on the merits at the district court level, Highland has a legitimate claim that a further stay constitutes harm.

The Corps will face at most minimal harm if an injunction is granted, given the equally compelling circumstances on both sides regarding the Corps' interest. On the one hand, one of

the Corps' duties is to issue permits in a way that properly protects the environment within the confines of the law; on the other, the Corps suffers minimal harm to its permitting process when its decision about a permit is stayed. *See OVEC v. Corps*, 528 F. Supp. at 632 ("Although the Corps has an identifiable interest in defending the validity of permits it has issued and the permitting process itself, the effect of an injunction on these interests seems rather inconsequential."). Therefore, the Corps does not face significant harm if an injunction is granted.

### 4. Balance of hardships

The Court must compare the harm to Plaintiffs in not granting an injunction to the harm caused to Defendants if an injunction is granted; an injunction can only be granted if the former outweighs the latter. In this case, the harm to Plaintiffs in not granting an injunction outweighs the harm to Defendants in granting an injunction. As described above, Highland has noted the importance knowing its coal production capabilities, and being able to flexibly respond to changes in the coal market. However, a "delay in reaping economic benefits" accruing from mining is a "temporary economic harm [that] can be outweighed by the permanent harm to the environment that comes from the filling of streams and valleys." *OVEC v. Corps*, 528 F. Supp. at 632 (citing *OVEC v. Bulen*, 315 F. Supp. 2d 821, 824 (S.D. W. Va. 2004) and *Bragg v. Robertson*, 54 F. Supp. 2d 635, 645 (S.D. W. Va. 1999)).

The extent of the financial impact of this delay seems uncertain, and does not rise to the level of harm that Plaintiffs have shown. *See OVEC v. Corps,* 528 F. Supp. at 632 (granting motion for preliminary injunction, despite defendant mining company's estimate of the impact of an adverse decision on the merits, in terms of increase in price-per-ton of coal and employee lay-

offs). While the Court recognizes that a delay and the granting of a stay could result in some economic harm to Highland, at this time the harm is too uncertain to find in Defendants' favor on this point, compared to the harm to Plaintiffs.

### 5. Public Interest

Lastly, the Court must determine if granting an injunction is in the public interest. The relevant public interest considerations here are similar to those addressed in earlier cases, with "worthy pursuits" on both sides. *OVEC v. Corps,* 528 F. Supp. at 633. There is indeed a public interest in favor of the private economic activities that would occur under this permit, and a public interest in showing due regard to the process by which the Corps considered and issued this permit. There is, however, also a compelling public interest in ensuring that this type of mining activity does not occur unless it meets the strict environmental standards of the CWA and NEPA. In other words, "the public has a strong interest in maintaining the balance Congress sought to establish between economic gain and environmental protection" through creation of these Acts. *Id.* at 633. The Court recognizes the important economic considerations at stake for Highland, but nonetheless finds that the public interest outweighs the economic disruptions which the granting of an injunction pending appeal may cause.

## Conclusion

Plaintiffs have demonstrated irreparable harm, and Plaintiffs' harm outweighs that faced by Defendants. Additionally, the public interest weighs in favor of granting this injunction. However, because Plaintiffs have not shown a sufficient likelihood of success on appeal, the Court will not grant an injunction pending appeal in this case. Therefore, the Plaintiffs' Motion for an Injunction Pending Appeal (ECF No. 187) is **DENIED**. Nonetheless, because this motion

involves a question of first impression, this Court **EXTENDS** the current stay of mining activities for an additional 14 days, in order to give Plaintiffs an opportunity to seek relief in the Court of Appeals. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties

ENTER: September 13, 2012

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE